IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| 800-209 LLC,<br><br>    Plaintiff,<br><br> v.<br><br>THE CINCINNATI INDEMNITY COMPANY,<br><br>    Defendant. | CIVIL ACTION<br>NO. 24-01101 |

**OPINION**

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**July 31, 2025**

**I.　　INTRODUCTION**

This case arises from the denial of payment for "fire watch" coverage by Defendant The Cincinnati Indemnity Company ("Defendant") under a commercial insurance policy issued to Plaintiff 800-209 LLC ("Plaintiff").[1]  On February 15, 2022, Plaintiff reported a loss to Defendant after a standpipe in Plaintiff's Pittsburgh, Pennsylvania property (the "Property") separated, causing water damage to the structure.  (Doc. No. 31-1 at 1; Doc. No. 35 at 2.)  Because repairs to the standpipe were required, the Property's fire suppression system had to be turned off and a "fire watch" for the building was mandated by the City of Pittsburgh Bureau of Fire.  (Doc. No. 35 at 3, 10.)  The standpipe was repaired on March 22, 2022, yet the "fire watch" at the Property had to continue until September 28, 2022, when the City of Pittsburgh notified Plaintiff that it was no longer needed.  (Doc. No. 31-1 at 2.)

---

[1]  A "fire watch" is required whenever a building's fire sprinkler system is inoperable.  This ensures the premises are continuously monitored for signs of fire or fire hazards.  In this case, the "fire watch" was performed by a third-party security company, Olympia Security Group.  (Doc. No. 35 at 10-11).

Pursuant to the terms of the insurance Policy, Defendant paid coverage for the required repairs to the Property, including coverage for the "fire watch" costs incurred up to March 22, 2022. (Doc. No. 31-1 at 1; Doc. No. 35 at 3.) However, Defendant would not cover Plaintiff's "fire watch" costs incurred from March 23, 2022, the day after the standpipe was repaired, through September 27, 2022, the last day the "fire watch" was required before the fire suppression system was turned back on. (Doc. No. 31-1 at 3.)

As a result, on February 9, 2024, Plaintiff filed the Complaint against Defendant, asserting claims for breach of contract and insurance bad faith. (See Doc. No. 1.) On May 27, 2025, Defendant filed a Motion for Summary Judgment, arguing that it is entitled to judgment as a matter of law on both claims. (Doc. No. 31.) For reasons that follow, Defendant's Motion for Summary Judgment (Doc. No. 31) will be denied.[2]

## II. BACKGROUND

### A. Factual Background

Plaintiff 800-209 LLC owns a property located in Pittsburgh, Pennsylvania (the "Property"). (Doc. No. 31-1 at 1, Doc. No. 35 at 2.) Defendant The Cincinnati Indemnity Company issued Plaintiff a commercial insurance policy (the "Policy") covering the Property.

---

[2] Defendant requested oral argument on its Motion for Summary Judgment. (See Doc. No. 31 at 1.) However, oral argument on the Motion is unnecessary and the Court will instead decide the Motion on the memoranda submitted by the parties. See AIG Baker Shopping Ctr. Props., LLC v. Deptford Twp. Plann. Bd., No. 04–5849, 2006 WL 83107, at *9 (D.N.J. Jan. 10, 2006) ("Federal Rule of Civil Procedure 78 grants a district judge wide discretion to decide whether to hear oral argument on a particular motion, or instead, to decide it on the papers."); see also Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176 (3d Cir. 1990) ("While [Federal] Rule [of Civil Procedure] 56 speaks of a 'hearing,' we do not read it to require that an oral hearing be held before judgment is entered. An opportunity to submit written evidence and argument satisfies the requirements of the rule."); E.D. Pa. Local R. Civ. P. 7.1(f) ("Any interested party may request oral argument on a motion. The court may dispose of a motion without oral argument.")

(Id.)  On February 15, 2022, Plaintiff reported a loss to Defendant after a standpipe in the Property separated, causing water damage to the structure.  (Id.)

Because repairs to the standpipe were required, the Property's fire suppression system had to be turned off.  (Doc. No. 35 at 10.)  As a result, the City of Pittsburgh Bureau of Fire mandated that a "fire watch" take place at the Property.  (Id.)  Prior to the standpipe separating, the City performed inspections of the Property's fire suppression system twice a year.  (Doc. No. 35 at 13.)  The fire suppression system passed the City's inspection on October 21, 2021, which is the most recent inspection prior to the incident.  (Id.)

On February 22, 2022, the standpipe was repaired.  (Doc. No. 31-1 at 2; Doc. No. 35 at 2.)  Defendant issued payment to Plaintiff for damage to the property resulting from the standpipe separation totaling $698,976.96, which also included $25,119.5 for "fire watch" costs incurred between February 15, 2022 and March 22, 2022.  (Doc. No. 31-2 at 1; Doc. No. 35 at 3.)  Before Plaintiff could turn the fire suppression system back on, however, the system had to first pass the Bureau of Fire's safety inspections.  (Doc. No. 35 at 14.)

On March 14, 2022, the Property manager's assistant Noah Arrigo ("Arrigo") sent an email update regarding the status of the standpipe's repairs to several recipients, including Plaintiff's public adjuster, Richard Cohen ("Cohen").  (Id. at 6.)  The email reported that the sprinkler system was back in service, but Plaintiff was still awaiting an update on the fire panel itself.  (Id. at 15.)  Based on that message, Cohen emailed Defendant on March 22, 2022, stating in pertinent part "[t]he fire watch is no longer in effect. The sprinkler system is operating."  (Doc. No. 35-10 at 2.)

On July 11, 2022, Cohen and a representative for Defendant Shawn Hroncek ("Hroncek") visited the Property, observing that the "fire watch" was still in effect.  (Doc. No. 35 at 7.)  After learning that the "fire watch" on the Property had been in place since the standpipe ruptured in

3

February, Cohen determined that his March 22, 2022 email to Defendant was a misinterpretation of Arrigo's earlier message. (Id.) Accordingly, on July 26, 2022, Cohen provided Defendant with a list of all emergency and ongoing expenses, including invoices for the "fire watch." (Doc. No. 35 at 19.)

The "fire watch" remained in place even after the standpipe was replaced because the jockey pump, which Plaintiff asserts had been damaged when it continued running during the standpipe failure, still required repacking to ensure its proper operation. (Doc. No. 35 at 7.) Apparently, the jockey pump was needed for the sprinkler system. (Id.) Due to missing materials, the pump could not be repacked until June 10, 2022. (Id.) Even then, Plaintiff had to wait for the City of Pittsburgh's inspection of the fire system. (Doc. No. 35 at 8.) Plaintiff, through the Property manager, finally received notice from the Deputy Fire Marshal for the Pittsburgh Bureau of Fire that the "fire watch" could end on September 28, 2022. (Id.) But as noted above, Defendant has refused to pay the costs of the "fire watch" from March 22, 2022 to September 27, 2022.

**B.    Procedural Background**

On February 9, 2024, Plaintiff filed a Complaint against Defendant in the Court of Common Pleas of Philadelphia County, Pennsylvania. (See Doc. No. 1 at 1.) On March 13, 2024, Defendant removed the case to the United States District Court for the Eastern District of Pennsylvania. (Id.) On March 20, 2024, Defendant filed a Motion to Dismiss the Complaint. (Doc. No. 5.) In response, on April 3, 2024, Plaintiff filed an Amended Complaint. (Doc. No. 7.) In the Amended Complaint, Plaintiff asserts the following claims against Defendant: (1) breach of contract (Count I), and (2) insurance bad faith, under 42 Pa. Con. Stat. §8371 (Count II). (See id.) On April 17, 2024, Defendant filed an Answer. (Doc. No. 17.)

On May 27, 2025, Defendant filed the instant Motion for Summary Judgment. (Doc. No. 31.) On June 17, 2025, Plaintiff filed a Response in Opposition. (Doc. No. 35.) On June 24, 2025, Defendant filed a Reply in Support of its Motion. (Doc. No. 36.) Defendant's Motion for Summary Judgment (Doc. No. 31) is now ripe for disposition.

**III.    STANDARD OF REVIEW**

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the Court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). "A dispute 'is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). A disputed fact "is material only if it might affect the outcome of the suit under governing law." Id. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011) (quoting Azur, 601 F.3d at 216). "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'"

5

Range v. AG United States, 53 F.4th 262, 269 (3d Cir. 2022) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247–49. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

## IV.   ANALYSIS

Defendant moves for summary judgment on both Plaintiff's breach of contract claim (Count I) and insurance bad faith claim under 42 Pa. Cons. Stat. § 8371 (Count II).  (See Doc. No. 31.)  Each claim will be discussed in turn. But because there is a genuine dispute of material fact on each claim, the Motion for Summary Judgment (Doc. No. 31) will be denied.

### A.   A Genuine Dispute of Material Fact Exists on the Breach of Contract Claim

First, there is a genuine dispute of material fact as to whether Defendant breached the insurance Policy by refusing to cover "fire watch" costs incurred from March 23, 2022 until September 27, 2022.  An insurance policy is a contract between the insurance company and the insured.  To succeed on a breach of contract claim, Plaintiff bears the burden of proving "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." Lodato v. Silvestro, No. 12-1130, 2013 WL 172203, at *4 (E.D. Pa. Jan. 15, 2013).

Here, because the parties dispute whether Defendant has paid for all damage covered under the Policy, there is genuine dispute of material fact concerning whether Defendant's refusal to cover Plaintiff's "fire watch" costs incurred after March 22, 2022 constitutes a breach of the Policy, the only element of the breach of contract claim in dispute. As noted above, the "fire watch" remained in place at the Property after the standpipe was replaced on March 22, 2022 because the fire suppression system's jockey pump required repacking to ensure proper system operation. (Doc. No. 35 at 7.) Plaintiff argues that the jockey pump had to be replaced because it became damaged when it continued to run during the standpipe failure. (Id.) Thus, Plaintiff submits that because the fire suppression system's damage was caused by the standpipe's separation, which Defendant admitted was a covered event under the insurance Policy, Defendant also was required to pay the additional "fire watch" costs.

Defendant argues to the contrary, however, that it was not required by the Policy to cover the additional "fire watch" costs because the damage to the jockey pump was caused by a pre-existing defect to the pump and pre-existing defects are excluded from coverage under the Policy terms. Specifically, Defendant argues that the fire suppression system's over-pressurization and packing leakage resulted in the need for the additional "fire watch" and that these defects were due to design deficiencies that predated the February 15, 2022 standpipe separation. (Id.) Defendant also argues that these pre-existing deficiencies are unrelated to the coverage provided for under the Policy for the original standpipe loss. Defendants also argue that these deficiencies are excluded from coverage by the Policy itself. (Id. at 4-5.)

In response, Plaintiff argues that Defendant "acknowledged that the standpipe rupture was not due to a pre-existing defect and was covered by the Policy, as [it] paid for repairs to the damage that resulted and for the "fire watch" through March 22, 2022." (Doc. No. 35 at 21.) Moreover,

7

Plaintiff asserts that Defendant cites no evidence of any physical change to the fire suppression system between March 22, 2022 and March 23, 2022 to explain why it covered the "fire watch" costs until March 22, 2022 but not the "fire watch" costs continuing after March 23, 2022. (Doc. No. 35 at 22.) Instead, Defendant relies solely on the email they received from Cohen, Plaintiff's public adjuster, indicating that the "fire watch" had ended—an email which Plaintiff asserts was inaccurate and the result of a simple miscommunication, not a reflection of any actual change in system's status. (Id. at 21-22.)

Given these two positions of the parties, there is a genuine dispute of material fact concerning whether Defendant's refusal to pay for the "fire watch" costs incurred after March 22, 2022 is considered a breach of the Policy.

**B.    A Genuine Dispute of Material Facts Exists on the Bad Faith Claim**

Second, there is also a genuine dispute of material fact on whether Defendant acted in bad faith under 42 Pa. Cons. Stat. § 8371 in denying Plaintiff coverage under the Policy for the additional "fire watch" costs. Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, permits policyholders to recover damages if they can show that an insurance company knowingly denied benefits and lacked a reasonable basis to do so. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONST. STAT. § 8371. While the statute does not define "bad faith," the Pennsylvania Superior Court defines bad faith as "any frivolous or unfounded refusal to pay the proceeds of a

policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)). The Third Circuit has adopted this definition and added that this sort of bad faith is in "breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005).

In addition, the Third Circuit has applied a two-part test to bad faith claims brought under § 8371:

> both elements of which must be supported by clear and convincing evidence: (1) whether the insurer lacked a reasonable basis for denying benefits under the insured's policy, and (2) whether the insurer knew or recklessly disregarded the lack of a reasonable basis.

Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012). Bad faith claims are fact specific and turn on the conduct of the insurer toward the insured. Dougherty v. Allstate Prop. And Cas. Ins. Co., 185 F. Supp. 3d 585, 598 (E.D. Pa. 2016). The plaintiff's burden at the summary judgment stage is "commensurately high because the court must view the evidence in light of the substantive evidentiary burden at trial." Tomaszewski v. Allstate Insurance Company, No. 19-cv-0080, 2022 WL 16553375, at *12 (E.D. Pa. Oct. 28, 2022).

Here, there is genuine dispute of material fact concerning whether Defendant had a reasonable basis for refusing to cover Plaintiff's "fire watch" costs incurred after March 22, 2022 and knew or recklessly disregarded the reasonable basis. Defendant argues it had a reasonable basis for denying Plaintiff's request for the additional "fire watch" costs incurred after March 22, 2022 because Defendant was expressly informed on March 22, 2022 by Cohen, Plaintiff's public adjuster, that the covered loss had been repaired, the fire suppression system was fully operational, and that "fire watch" was no longer needed. (Doc. No. 31-2 at 3.) According to Defendant,

9

Plaintiff's mere disagreement with Defendant's denial of coverage for the additional "fire watch" costs does not support a claim for bad faith as a matter of law. (Id. at 7.)

Additionally, Defendant argues that Plaintiff has failed to present any evidence that Defendant lacked a reasonable basis for the denial or recklessly disregarded a reasonable basis. In this regard, Defendant argues that it must merely show that it conducted a review of the standpipe accident sufficient to yield a reasonable foundation for denial of coverage, not that its investigation yielded a correct conclusion. (Doc. No. 31-2 at 8.) Defendant further contends that, as a matter of law, there can be no bad faith if a reasonable basis existed for denying the claim - even if Defendant did not actually rely on that reason. (Id.)

Defendant claims that the record demonstrates that its coverage position was correct, or at least reasonable. (Id.) Various examples of reasonableness are provided, including performing a comprehensive and prompt investigation into the claim, conducting interviews with third party contractors retained by Plaintiff, retaining an engineering expert to assess the standpipe separation, taking an Examination Under Oath of Plaintiff's property manager, reviewing all documentation produced by Plaintiff throughout the adjustment process, and issuing a detailed coverage position letter explaining its findings and basis for denial pursuant to the Defects, Errors and Omission Exclusion in the Policy. (Id. at 7-8.)

In contrast, Plaintiff argues that Defendant did not have a reasonable basis for refusing coverage because (1) Defendant already knew that the "fire watch" could not end without the approval of the City of Pittsburgh; (2) Cohen, Plaintiff's public adjuster, sent a corrected email shortly after his original mistaken email requesting coverage for the additional "fire watch" costs; and (3) a representative of Defendant observed that the "fire watch" still ongoing during the July 11, 2022 visit to the Property. (Doc. No. 35 at 24.) Plaintiff further claims Defendant knew that

10

they did not have reasonable basis for denying coverage because, at the time they refused payment, Defendant had received Cohen's corrected email that the "fire watch" was still ongoing and had physically witnessed, through a representative, that the "fire watch" was still occurring at the July 11, 2022 Property visit.  (Id. at 25.)

Accordingly, based on the differing positions, there is a genuine dispute of material fact concerning whether Defendant had a reasonable basis for refusing to pay for Plaintiff's "fire watch" costs incurred after March 22, 2022 and knew or recklessly disregarded the lack of a reasonable basis.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 31) will be denied.  An appropriate Order follows.